UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH O'DOWD,

          Plaintiff,

v.

W.A. FOOTE MEMORIAL
HOSPITAL,

          Defendant.

Case No. 2:21-cv-10806

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER**
**GRANTING SUMMARY JUDGMENT MOTION [14]**

Defendant W.A. Foote Memorial Hospital moved for summary judgment on Plaintiff Deborah O'Dowd's claims. ECF 14.[1] For the following reasons, the Court will grant the motion.

**BACKGROUND**

Plaintiff began working for the Hospital in 1988. ECF 14-2, PgID 106. In 1999, she was in a rollover car accident and sustained a spine and neck injury. *Id.* at 121–22. Since the accident, she has had trouble lifting heavy objects. *Id.* at 124–27.

Plaintiff eventually became a Buyer for the Hospital. *Id.* at 107. When she started as a Buyer, she did not touch any products. *Id.* at 111. Plaintiff was eventually moved to the Hospital's warehouse as a Buyer. *Id.* at 115.

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

Although she still retained her Buyer title, Plaintiff's supervisors reassigned her duties. *Id.* at 117–18; ECF 14-3, PgID 315. And those duties were closer to what a materials coordinator did. ECF 14-3, PgID 316, 343–44. She—like the other warehouse teammates—had "a start to finish ownership of a book of business or product line." *Id.* at 429. The team worked that way because the warehouse's organization was complex and any other employee "wouldn't know where to put [items] without some type of training." *Id.* at 399–401; *see* ECF 19-12, PgID 1039–41, 1043–44. Plaintiff's job description explained that she needed to lift ten to twenty-five pounds up to a third of her time working. ECF 14-4, PgID 445. Although lifting items was not part of her job description's "essential functions," one function included "support[ing] [the] Purchasing Department staff with PTO coverage, special projects, and other necessary work." *Id.* at 447. Plaintiff's supervisors also believed lifting more than ten pounds was essential to her job. ECF 14-3, PgID 429–30; ECF 14-5, PgID 553–55.

One of Plaintiff's tasks was to unpack and stock heart and lung packs that were to be used for surgeries. ECF 14-2, PgID 134–35; ECF 14-3, PgID 331. The boxes weighed more than ten pounds. *Id.* at 134; ECF 14-6, PgID 577. The heart and lung packs, however, were not the only items that weighed more than ten pounds that Plaintiff needed help lifting. ECF 14-3, PgID 331, 342; ECF 14-5, PgID 554–55.

In 2017, Plaintiff requested an accommodation to not lift more than ten pounds. ECF 14-2, PgID 129–30, 136. Her supervisor later arranged for other

employees to help her lift items that weighed more than ten pounds. *Id.* at 136–37, 139–40, 143; ECF 14-6, PgID 577.

When the Hospital tried to accommodate Plaintiff by having other employees lift items for her, it created congestion and safety concerns for surgery patients and other employees. ECF 14-3, PgID 401–02; ECF 19-12, PgID 1039–41, 1043–44. Beyond those concerns, the team's morale was low because they were overworked while accommodating Plaintiff. ECF 14-3, PgID 342, 404, 423; ECF 14-5, PgID 556; *see also* ECF 19-12, PgID 1040–41, 1044. During the time, there was not enough "light duty . . . within [the] department" to keep Plaintiff busy. ECF 14-5, PgID 555; *see also* ECF 14-3, PgID 429.

The Hospital ultimately put Plaintiff on leave under the Family Medical Leave Act ("FMLA") in February 2018. ECF 14-2, PgID 149–50, 159; ECF 14-8, PgID 697. Plaintiff believed that the Hospital illegally placed her on FMLA leave, so she told the Hospital that she had notified the Equal Employment Opportunity Commission ("EEOC") about the alleged illegality. ECF 19-18, PgID 1058. Shortly after being placed on FMLA leave, Plaintiff received short-term disability benefits. ECF 14-2, PgID 162–63. And while on short-term disability, her doctor authorized extending her period off work several times. ECF 14-6, PgID 583–84, 587, 589.

When Plaintiff returned to work, she took a new job—with the same pay, seniority, and benefits—in the Hospital's customer service department because her old position had been eliminated due to a restructuring. ECF 14-2, PgID 180; ECF 14-6, PgID 592, 594. Plaintiff eventually moved to another position at the Hospital

3

after she was dissatisfied with her job in customer service. ECF 14-2, PgID 195–96; ECF 14-11, PgID 708. And she retired from that position in 2019. ECF 14-2, PgID 198; ECF 14-12, PgID 711.

In the end, Plaintiff brought four Americans with Disabilities Act ("ADA") claims against the Hospital: (1) "fail[ure] to conduct an individualized inquiry into her ability to work"; (2) "forcing her onto an involuntary medical leave"; (3) failure to accommodate; and (4) retaliation based on constructive discharge. ECF 19, PgID 732–33; *see* ECF 1, PgID 9–16. Plaintiff also asserted similar claims under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). ECF 19, PgID 732; *see* ECF 1, PgID 16–19.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174

(6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Courts address ADA and PWDCRA claims in the same inquiry. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) ("The PWDCRA 'substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim.'") (quotation omitted); *see also Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472 (1999) ("[The Michigan Court of Appeals] and the Michigan Supreme Court have noted that the federal [ADA] and the PWDCRA share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the PWDCRA."). Plaintiff agrees that her PWDCRA claims hinge on the same reasoning as her ADA claims. ECF 19, PgID 732 n.2. The Court will therefore resolve the PWDCRA claims under the ADA's framework.

The ADA forbids discrimination against a qualified individual based on disability. 42 U.S.C. § 12112(a). "[N]ot making reasonable accommodations" is one form discrimination that the ADA forbids. § 12112(b)(5)(A). Plaintiff can show discrimination through direct or indirect evidence. *Hostettler v. Coll. Of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (citation omitted). "[B]ecause the framework for

analyzing [direct and indirect evidence] cases differs," it "is vital" that the Court and the parties note which test applies. *Id.* (quotation omitted).

The ADA also forbids retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Plaintiff can show retaliation through direct or indirect evidence. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). The Court will address Plaintiff's ADA claims in turn.

I. <u>Discrimination Claim</u>

Plaintiff's ADA discrimination claim stems from the Hospital "forcing her onto an involuntary medical leave." ECF 19, PgID 732; *see* ECF 1, PgID 9–16. The Hospital moved for summary judgment on the discrimination claims because Plaintiff was not a "qualified individual" under the ADA. ECF 14, PgID 86–89.

Only "qualified individuals" can sue for discrimination under the ADA. *McKnight v. Gen. Motors Corp.*, 550 F.3d 519, 522 (6th Cir. 2008) (quotation omitted). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

"ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 297 (6th Cir.

6

2019) (citation omitted). Thus, when an employer "acknowledges that it relied upon the plaintiff's handicap in making its employment decision, the *McDonnell Douglas* burden shifting approach is unnecessary because the issue of the employer's intent," is conceded. *Id.* at 297–98 (cleaned up). It follows that, in those cases, the Court must rely on the direct evidence framework to resolve the disability discrimination claim. *Id.* at 298.

Here, the Hospital conceded that it relied on Plaintiff's disability when it placed her on FMLA leave. ECF 14, PgID 85, 90. The Court will therefore apply the direct evidence framework.

For a prima facie ADA discrimination claim based on direct evidence, Plaintiff must show: "(1) that she is an individual with a disability, and (2) that she is otherwise qualified for her job despite the disability (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." *Hostettler*, 895 F.3d at 852 (cleaned up). If Plaintiff satisfies the direct evidence framework, then the Hospital must prove "that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (quotation omitted).

The Hospital does not dispute that Plaintiff is disabled. ECF 21, PgID 1120. Thus, it is irrelevant whether Plaintiff is 'regarded as disabled.' ECF 19, PgID 746–48 (Plaintiff arguing that she is also 'regarded as disabled' under the ADA); *see Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 n.8 (6th Cir. 2019) ("[A]

'regarded as' plaintiff still must show that they are 'qualified' for a position.") (citation omitted). As a result, the dispute turns on the second element: whether Plaintiff is "otherwise qualified for her job despite the disability." *Hostettler*, 895 F.3d at 852 (citation omitted).

Next, Plaintiff cannot show that she is "otherwise qualified" for her position without an accommodation from her employer, and she does not argue otherwise. *See* ECF 19, PgID 748–50. Plaintiff instead claimed that she was "otherwise qualified" with an alleged essential job requirement eliminated: lifting no more than ten pounds, which included unpacking and stocking the heart and lung packs. *Id.* at 734, 750.

That said, Plaintiff also seemed to claim, in another part of her brief, that her proposed accommodation was reasonable and did not create a hardship for the Hospital. *Id.* at 752. But Plaintiff's brief did not detail her proposed accommodation; it suggested that medical leave was an unreasonable accommodation. *Id.* The Court will infer, based on the other part of her brief and the record, that her proposed accommodation was to no longer lift ten pounds, which included unpacking and stocking heart and lung packs. ECF 19, PgID 734, 738–39; ECF 19-14, PgID 1048–49.

The parties dispute whether lifting items more than ten pounds was an essential part of Plaintiff's job. ECF 14, PgID 86–89; ECF 19, PgID 748–50. "Essential functions are 'the fundamental job duties of the employment position the individual with a disability holds.'" *Rorrer*, 743 F.3d at 1039 (quoting 29 C.F.R. § 1630.2(n)(1)).

8

"A job function may be considered essential because (1) the position exists to perform the function, (2) a limited number of employees are available that can perform it, or (3) it is highly specialized." *Id.* (citing 29 C.F.R. § 1630.2(n)(2)).

An essential job function looks at several nondispositive factors. *Id.* at 1039–40 (citations omitted). Those factors include:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

Lifting ten pounds was an essential part of Plaintiff's job because there was "a limited number of employees . . . available that" could lift ten pounds. *Rorrer*, 743 F.3d at 1039 (citing 29 C.F.R. § 1630.2(n)(2)). Three reasons support the finding.

First, Plaintiff's supervisors believed lifting more than ten pounds was essential to the job. ECF 14-3, PgID 429–30; ECF 14-5, PgID 553–55. Although "[n]one of this is to say that whatever the employer says is essential necessarily becomes essential," the evidence supports the supervisors' view. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 765 (6th Cir. 2015) (en banc).

For one, Plaintiff and her coworkers had "a start to finish ownership of a book of business or product line." ECF 14-3, PgID 429. And her team worked that way because the warehouse's organization was complex and any other employee "wouldn't know where to put [items] without some type of training." *Id.* at 399–401; *see* ECF

9

19-12, PgID 1039–41, 1043–44. After all, simply shadowing an employee "one day doesn't mean [the other employee] can put away stock [] eas[ily]." ECF 14-3, PgID 401; *see also* ECF 19-12, PgID 1039–41, 1043–44. For another, Plaintiff's supervisors routinely needed her to cover for other warehouse employees, which meant that she needed to lift ten pounds. ECF 14-5, PgID 554–55; *see also* ECF 14-4, PgID 447 (listing an essential function of her job as "[s]upport[ing] [the] Purchasing Department staff with PTO coverage, special projects, and other necessary work"). At bottom, lifting ten pounds was an essential part of her job because once the Hospital relieved her of those duties, there was not enough "light duty . . . within [the] department" to keep her busy. ECF 14-5, PgID 555; *see also* ECF 14-3, PgID 429.

Second, the job description explained that Plaintiff needed to lift ten to twenty-five pounds up to a third of her time at work. ECF 14-4, PgID 445. Although Plaintiff pointed out that she spent only forty minutes every eight days unpacking and stocking the heart and lung packs, ECF 19, PgID 750; ECF 14-5, PgID 514–15, the heart and lung packs were not the only item that weighed more than ten pounds that Plaintiff needed help lifting. ECF 14-3, PgID 331, 342; ECF 14-5, PgID 554–55. Thus, Plaintiff's narrow view about what specific tasks she could not do ignores her larger limitation that barred her from lifting more than ten pounds—a routine task.

Third, when the Hospital tried to accommodate Plaintiff by having other employees lift items for her, it created bottlenecks and safety concerns for surgery patients and other employees. ECF 14-3, PgID 401–02; ECF 19-12, PgID 1039–41, 1043–44. To be sure, warehouse morale was down because her team was always

10

running behind given that they were essentially short a worker. ECF 14-3, PgID 342, 404, 423; ECF 14-5, PgID 556; *see also* ECF 19-12, PgID 1040–41, 1044. Plaintiff's teammates were even working past their "scheduled shift to complete tasks." ECF 19-12, PgID 1040, 1042, 1044. And federal "[c]ourts have previously found that, *even if* a function is rarely required, the *consequences* of failing to require the employee to perform that function may illustrate that it is essential." *Swann v. Washtenaw Cnty.*, 221 F. Supp. 3d 936, 942 (E.D. Mich. 2016) (emphasis added). In all, based on the Hospital's "words, policies, and practices and taking into account all relevant factors," lifting more than ten pounds was an essential part of Plaintiff's job. *Ford Motor Co.*, 782 F.3d at 765–66.

Because Plaintiff's proposed accommodation was to not lift more than ten pounds, the ADA discrimination claim fails. ECF 19, PgID 734, 738–39; ECF 19-14, PgID 1048–49. Put differently, Plaintiff sought to remove an essential function of her job. A "reasonable accommodation" "does not include removing an 'essential function' from the position, for that is per se unreasonable." *Ford Motor Co.*, 782 F.3d at 761 (cleaned up). It follows that Plaintiff's inability to lift more than ten pounds meant she was not a "qualified individual" under the ADA. 42 U.S.C. § 12111(8). The Court will therefore grant summary judgment to the Hospital on the ADA discrimination claim.

II. <u>Failure to Accommodate</u>

An employer must "mak[e] reasonable accommodations" to an employee under the ADA. 42 U.S.C. § 12112(b)(5)(A). And the same direct evidence framework set

11

forth above applies to failure to accommodate claims. *Blanchet v. Charter Commc'ns, LLC*, --- F.4th ---, 2022 WL 682540, at *3 (6th Cir. 2022) (citations omitted). An employee requiring an accommodation must identify one and show that it is reasonable and will allow her to perform her essential job functions. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010).

But Plaintiff never proposed another accommodation. ECF 19, PgID 752–53. Plaintiff instead argued that medical leave was unreasonable. *Id.* Because Plaintiff did not offer a proposed accommodation, Plaintiff cannot meet her burden under the claim. *See Jakubowski*, 627 F.3d at 202 ("[T]he employee is saddled with the burden of *proposing* an accommodation and *proving* that it is reasonable.") (emphasis added) (citation omitted).

If Plaintiff were to assert that her proposed accommodation was to no longer lift more than ten pounds, then the claim would fail for the reasons explained earlier. *See* ECF 19, PgID 739; ECF 19-14, PgID 1048–49; *Ford Motor Co.*, 782 F.3d at 761, 763. Indeed, "[i]n failure-to-accommodate claims where the employee requests an 'accommodation that exempts her from an essential function,' 'the essential functions and reasonable accommodation analyses run together.' One conclusion (the function is essential) leads to the other (the accommodation is not reasonable)." *Ford Motor Co.*, 782 F.3d at 763 (cleaned up).

Still, the Hospital did not act unreasonably when it placed Plaintiff on medical leave. "Medical leave as an accommodation is not a novel concept." *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 782 (6th Cir. 1998). And the Sixth Circuit has

held that "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Id.* at 783. Here, medical leave was reasonable because Plaintiff successfully applied for short-term disability shortly after she was placed on leave. ECF 14-2, PgID 162. And while Plaintiff was on short-term disability, her doctor extended her period off work several times. ECF 14-6, PgID 583–84, 587, 589. In short, the medical leave tracked how Plaintiff's disability prevented her from doing the essential tasks of her job. The Court will thus grant summary judgment to the Hospital on the failure to accommodate claim.

III. <u>Individualized Inquiry</u>

Plaintiff asserted an individualized inquiry against the Hospital. ECF 19, PgID 732, 751–52. The claim, however, is confusing because it is ambiguous. On the one hand, Plaintiff cited case law about disabled individuals applying for jobs. *Id.* at 751 (citing *Holiday v. City of Chattanooga*, 206 F.3d 637 (6th Cir. 2000)). These claims are called individualized inquiry claims. *See Garibay v. Hamilton Cnty.*, 496 F. Supp. 3d 1140, 1149–50 (E.D. Tenn. 2020). The heart of those claims bar an employer from simply reviewing disabled job applicants and rejecting them without examining whether the applicants can do the job despite having a disability. *Id.* (collecting cases). Because Plaintiff was not applying for a job, an individualized inquiry claim does not apply to her.

On the other hand, Plaintiff also cited case law about disabled employees asking for reasonable accommodations. ECF 19, PgID 751 (citing *Kleiber*, 485 F.3d at 871). These claims are called interactive process claims. *Blanchet*, ---F.4th---, 2022

13

WL 682540, at *7. For those claims, "[o]nce an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Hostettler*, 895 F.3d at 857. The process is an "individualized inquiry," *id.* (quotation omitted), that aims "to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations,'" *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). To that end, both parties must participate in good faith. *Id.* An employer does not act in good faith if it "determine[s] what accommodation it [is] willing to offer before ever speaking with" the employee. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018).

But a failure to engage in the interactive process is not an ADA violation unless "[P]laintiff establishes a prima facie case of failure to accommodate." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (citing *Rorrer*, 743 F.3d at 1041). Because Plaintiff cannot show a failure to accommodate, the interactive process claim fails. The Court will therefore grant summary judgment to the Hospital.

IV. <u>Retaliation through Constructive Discharge</u>

Last, Plaintiff claimed that the Hospital retaliated against her through constructive discharge for filing an EEOC charge and filing internal reports about the Hospital. ECF 19, PgID 732–33. But a retaliation claim differs from a constructive discharge claim.

"A constructive discharge occurs when 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th

14

Cir. 2020) (quoting *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008)). To show a constructive discharge, Plaintiff must show that the Hospital "intended to oust [her] . . . [through an] objectively intolerable work environment." *Id.* (citations omitted).

Yet a retaliation claim applies only if an employee engages in a "protected activity." *Rorrer*, 743 F.3d at 1046 (citation omitted). And without "direct evidence of retaliation," the claim must rely on the "*McDonnell Douglas* burden shifting approach." *Id.* (cleaned up).

But Plaintiff offered no analysis to help the Court understand her claim. ECF 19, PgID 753–54. And Plaintiff's bare complaint does not advance the inquiry. *See* ECF 1, PgID 14–16. Rather, Plaintiff merely claimed that "from a timing perspective" the Hospital's "realignment and [her] position no longer exist[ing]" "is simply too coincidental." ECF 19, PgID 753–54. Although it appears that Plaintiff wants the Court to find retaliation based on indirect evidence of constructive discharge, Plaintiff has offered no argument under the *McDonnell Douglas* burden shifting approach to show why she has established a prima facie retaliation claim. *See id.* After all, "[P]laintiff bears the initial burden to establish a prima facie case of retaliation" using the *McDonnell Douglas* burden shifting approach. *Rorrer*, 743 F.3d at 1046.

And if Plaintiff sought to raise a direct evidence retaliation claim, Plaintiff waived it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a

15

possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (omission in original) (quotation omitted). Indeed, "because the framework for analyzing the two kinds of cases differs," it "is vital" for Plaintiff to explain which test applies. *Hostettler*, 895 F.3d at 852.

Even if the Court were to analyze Plaintiff's claim as simply a constructive discharge claim, the claim fails. As mentioned, a constructive discharge claim requires the hospital to have a discriminatory intent to "create[] an objectively intolerable work environment to deliberately force [Plaintiff] to resign." *Tchankpa*, 951 F.3d at 814 (citation omitted). Plaintiff's suggestion that the timing of the Hospital's realignment was "simply too coincidental" fails to show discriminatory intent. ECF 19, PgID 753–54; *see* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record . . . ."). All told, the poorly developed retaliation claim based on constructive discharge fails and the Court will grant summary judgment to the Hospital on it. And, in sum, the Court will grant the Hospital's summary judgment motion.

**WHEREFORE**, it is hereby **ORDERED** that the summary judgment motion [14] is **GRANTED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 30, 2022

16

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
